**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JEROME WILLIAMS, *et al.*,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 06-0799-WS-B** |
| ) | |
| **SAXON MORTGAGE SERVICES,** ) | |
| **INC., *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on a host of motions, to-wit: Homeowners Loan Corp.'s Opposed Motion for Leave to File a Third Party Complaint (doc. 86); Homeowners Loan Corp.'s Motion for Judgment on the Pleadings (doc. 87);[1] Saxon Mortgage Services, Inc.'s Motion for Judgment on the Pleadings (doc. 93); and Ticor Title Insurance Company of Florida's Motion to Dismiss Third Amended Complaint (doc. 107). All four motions are ripe for disposition at this time.[2]

---

[1]      HLC has requested oral argument on its Motion for Judgment on the Pleadings. Pursuant to Local Rule 7.3, the Court in its discretion may rule on any motion without oral argument. After careful consideration of the parties' detailed written submissions, the undersigned is of the opinion that oral argument would not be of substantial assistance in resolving the issues presented. Accordingly, the request for oral argument is **denied**.

[2]      Also pending is HLC's Renewed Motion for Judgment on the Pleadings (doc. 109), which was filed on September 24, 2007 and is substantively identical to its fully briefed predecessor. Although that defendant's original Motion for Judgment on the Pleadings (doc. 87) was directed at the Second Amended Complaint rather than the Third Amended Complaint, there is no substantive difference between them as far as HLC is concerned. In light of the redundancy of the motions, and also to avoid unnecessary confusion and because the original Motion for Judgment on the Pleadings has already been fully briefed, while the new iteration has not, the Court will deem the duplicative Renewed Motion for Judgment on the Pleadings (doc. 109) **moot** and will examine the fully briefed original Motion for Judgment on the Pleadings in the context of the Third Amended Complaint.

I.      **Background.**

Plaintiffs Jerome Williams, Linda Williams, and Claude Williams, Sr. brought this action as a result of a real estate loan transaction involving defendants Homeowners Loan Corporation ("HLC"), Saxon Mortgage Services, Inc. ("Saxon"), and Ticor Title Insurance Company of Florida ("Ticor").  The initial Complaint (doc. 1) was filed on November 28, 2006.  A Third Amended Complaint (doc. 104) filed on September 2, 2007, adds Deutsche Bank National Trust Company ("Deutsche") as an additional party defendant, on the theory that Deutsche is the trustee and custodian of the IXIS Real Estate Capital Trust 2005-HE3 Mortgage Pass-through Certificates, Series 2005-HE3, in which trust the Williamses' mortgage is currently held, rendering Deutsche an assignee of the mortgage.[3]

According to the Third Amended Complaint, plaintiffs obtained a home mortgage loan from HLC on or about March 30, 2005.  (Doc. 104, ¶ 7.)  Nonparty Swafford Settlement Services ("Swafford") acted as the closing agent on the loan and also as defendant Ticor's agent, and Ticor issued a title insurance policy to HLC.  (*Id.*)  Following the closing, HLC assigned the loan to Saxon, which presently holds and services the loan.  (*Id.*)  This action arises from certain disclosures allegedly omitted by, and certain charges levied by, defendants in connection with this loan transaction.

The Third Amended Complaint enumerates four causes of action.  In Count I, plaintiffs maintain that HLC, Saxon and Deutsche are liable under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), because the disclosures made in connection with the closing understated the finance charge by omitting certain fees, such as a $375 fee paid to Swafford for "Abstract or Title Search," a $225 fee paid to Swafford for "Title Examination," a $200 title insurance premium paid to Ticor, and a $120 fee for recording the mortgage in probate court.  (Doc. 104, ¶¶ 13, 35.)[4]  Plaintiffs contend that these omissions resulted in an understatement of the finance

---

[3]      Deutsche first appeared in this action on September 26, 2007, by filing an Answer (doc. 112) and a Motion for Judgment on the Pleadings (doc. 113).  That Motion, which has not been briefed, will be the subject of a separate Order.

[4]      To place these amounts in context, plaintiffs allege that the TILA disclosures provided at closing reflected that the total amount financed was $37,104 and that the total finance charge was $98,137.18, including a prepaid finance charge in the amount of $2,946.

charge, entitling plaintiffs to rescind the mortgage and to collect damages.  In Count II, plaintiffs allege that HLC, Saxon and Deutsche violated the Home Ownership and Equity Protection Act, 15 U.S.C. §§ 1602(aa) and 1639 ("HOEPA"), which imposes certain requirements on lenders with respect to high-rate mortgages.  Plaintiffs further allege that their loan qualified as a high-rate mortgage because the total points and fees exceeded 8% of the loan amount, and that HLC, Saxon and Deutsche violated HOEPA by failing to provide required disclosures and by imposing pre-payment penalties and a due-on-demand clause.  (Doc. 104,  ¶¶ 10, 41-47.)  On that basis, plaintiffs seek damages, rescission of the transaction, and other relief.

Counts III and IV are leveled exclusively at Ticor, and purport to assert claims under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA").  In particular, Count III alleges that the $200 title insurance premium assessed against the Williamses for a lender title insurance policy exceeds the maximum premium allowed by the Alabama Department of Insurance, and that such excessive fee was split between Ticor and Swafford.  As a result, plaintiffs allege, Ticor is in violation of RESPA for having given or accepted a portion of a charge made or received for real estate settlement services other than for services actually rendered.  Count IV is substantively identical to Count III, except that it is brought on behalf of a putative class of similarly situated residential mortgage borrowers.  This Court has previously dismissed in this very action these RESPA causes of action against Ticor.  (*See* doc. 85.)[5] Plaintiffs do not attempt to circumvent the prior dismissal of these claims against Ticor, but instead include an explanatory footnote in their Third Amended Complaint stating that they "include the claims against Ticor in this amended complaint in order to preserve their right to appeal the dismissal."  (Third Amended Complaint (doc. 104), at 1 n.1.)

---

(Doc. 104, ¶ 12.)  The gravamen of plaintiffs' TILA claims is that the listed finance charge was understated by $920 because the line items listed above were omitted.

[5]     In particular, the Court entered an Order (doc. 85) on June 23, 2007, holding "that the Williamses' claims against Ticor are beyond the purview of RESPA, which is not a price-control act and which does not forbid real estate settlement providers from receiving excessive charges for the services they provide."  (*Id.* at 11-12.)  On that basis, the Court granted Ticor's Motion to Dismiss, and dismissed Counts III and IV of the Second Amended Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P.

The Third Amended Complaint specifically invokes the doctrine of equitable tolling with respect to the applicable limitations period.  According to that pleading, defendants were in sole possession of information concerning the cost of settlement services charged to borrowers, and actively misled the plaintiffs by disseminating fraudulent HUD-1 statements calculated to deceive them.  (*Id.*, ¶ 26.)  Plaintiffs allege that "[t]he unknown and inherently unknowable nature of Defendants' unlawful charges did not give Plaintiffs any reason to inquire, investigate or discover Defendants' wrongdoing.  As a practical reality, it was impossible for persons closing on residential loans to detect Defendants' unlawful violations." (*Id.*, ¶ 27.)  Plaintiffs further allege that defendants' scheme was "by its nature and design 'self-concealing'" (*id.*, ¶ 31(a)), and that defendants knowingly misrepresented to plaintiffs the finance charges, amounts financed and APRs on TILA disclosure statements, by failing to include all required disclosures in their calculations.  (*Id.*, ¶ 31(c).)  The Third Amended Complaint also states that plaintiffs exercised reasonable consumer diligence in their dealings with defendants (by reviewing all relevant loan documents and actively participating in all aspects of the loan transaction), but could not have, and could not reasonably have been expected to, uncover the true facts.  (*Id.*, ¶¶ 30, 32.)

HLC and Saxon have filed motions under Rule 12(c), Fed.R.Civ.P., for judgment on the pleadings on the grounds that the applicable statute of limitations has expired on plaintiffs' causes of action.  Plaintiffs oppose these motions by invoking equitable tolling principles. Additionally, HLC has filed a motion seeking leave to file a third-party complaint against named defendant Ticor and nonparty Swafford.  Ticor has opposed that motion.  Finally, Ticor has moved to dismiss the claims asserted against it in plaintiffs' Third Amended Complaint, on the ground that such causes of action have already been dismissed by this Court in this very action.

II.    **Analysis.**

    A.    ***The Motions for Judgment on the Pleadings.***

Both HLC's Motion for Judgment on the Pleadings and Saxon's tagalong Motion argue that the Williamses' claims against them for alleged violations of TILA and/or HOEPA were not

brought in a timely manner and therefore must be dismissed.[6]

       *1.    Legal Standard.*

       "Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (citation omitted); *see also Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1232 (11th Cir. 2005). In that context, the Court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *King v. American Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002) (likening Rule 12(c) standard to that used in reviewing Rule 12(b) motions, and imposing on trial court the responsibility to accept all allegations of complaint as true and draw all reasonable inferences in favor of the nonmovant). Dismissal pursuant to Rule 12(c) is proper only where after reviewing the pleadings "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations" therein. *Horsley*, 292 F.3d at 700. Therefore, the Court's review of HLC and Saxon's Motions is confined to the four corners of the pleadings, as well as any judicially noticed facts. If plaintiffs

---

      [6]     Both Motions sweep broadly and would include all of plaintiffs' TILA claims. In their opposition brief, however, plaintiffs assert that their claims for rescission under TILA "are not barred, without respect to equitable tolling, because the claims were asserted within one-year of the rescission and the Defendants' wrongful failure to respond to the rescission." (Plaintiffs' Brief (doc. 96), at 2.) In reply, HLC "concedes Plaintiffs' rescission claim is timely." (HLC Reply (doc. 100), at 4.) Saxon makes no parallel concession, but plaintiffs' argument on this point is plainly correct. When a borrower exercises his right to rescission under TILA, the creditor must take action within 20 days after receipt of notice of rescission to return the borrower's money and to terminate its security interest. *See* 15 U.S.C. § 1635(b). Failure to do so constitutes a separate violation of TILA under § 1640; therefore, the one-year limitations period for rescission claims runs from 20 days after plaintiffs gave notice of rescission. *See Belini v. Washington Mut. Bank, FA*, 412 F.3d 17, 26 (1st Cir. 2005); *Egipciaco Ruiz v. R & G Financial Corp.*, 313 F. Supp.2d 48, 50 (D.P.R. 2004); *Canty v. Equicredit Corp. of America*, 2003 WL 21243268, *2 (E.D. Pa. May 8, 2003). The Third Amended Complaint includes specific allegations that plaintiffs exercised their rescission rights via letters to HLC and Saxon dated December 29, 2006; therefore, the one-year statute of limitations for their rescission claims could not have begun running earlier than that date, and those claims are obviously timely filed. The Motions for Judgment on the Pleadings are **denied** with respect to the rescission claims in Counts I and II.

have adequately alleged these causes of action in their Third Amended Complaint, then the Motions must be denied.

2.      *Equitable Tolling in TILA Context.*

The parties agree that plaintiffs' TILA and HOEPA claims are subject to a one-year statute of limitations.  (HLC Brief (doc. 88), at 6; Saxon Brief (doc. 93), at 1-2; Plaintiffs' Brief (doc. 96), at 2, 3.)  The text of the statute confirms this assessment.  *See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court ... within one year from the date of the occurrence of the violation.").  This lawsuit is predicated on a loan transaction that closed on March 30, 2005; however, the Complaint was not filed until November 28, 2006, some 20 months later.  As such, plaintiffs' non-rescission TILA and HOEPA claims are time-barred on their face unless equitable tolling saves them.

It is well-established in this Circuit and elsewhere that the one-year limitations period for TILA causes of action is subject to equitable tolling.  *See, e.g., Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir.1998) ("We therefore agree with the Third, Sixth, and Ninth Circuits that the statute of limitations in TILA is subject to equitable tolling.");  *In re Community Bank of Northern Virginia*, 418 F.3d 277, 304-05 (3rd Cir. 2005) (observing that claims under HOEPA and TILA are subject to equitable tolling); *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 580 (M.D. Fla. 2006) ("The Eleventh Circuit has recognized that TILA's statute of limitations is subject to equitable tolling.").[7]  Where equitable tolling applies, plaintiffs may sue after the statutory period has expired if they have been prevented by inequitable circumstances from doing so previously.  *See Ellis*, 160 F.3d at 706.[8]

---

[7]    *But see Baldwin v. Laurel Ford Lincoln-Mercury, Inc.*, 32 F. Supp.2d 894, 902 (S.D. Miss. 1998) (holding "that the one-year period indicated in section 1640(e) is jurisdictional and cannot be extended on theory of equitable tolling").

[8]    There is ample law to support the proposition that equitable tolling is subject to the heightened pleading requirements of Rule 9(b), Fed.R.Civ.P.  *See, e.g., Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994) (holding that "allegations of fraudulent concealment, which toll the statute of limitations, must meet the requirements of" Rule 9(b)); *National Group for Communications and Computers Ltd. v. Lucent*, 420 F. Supp.2d 253, 264-65 (S.D.N.Y. 2006) (to demonstrate appropriateness of equitable tolling, plaintiff must plead elements of fraudulent concealment with particularity pursuant to Rule 9(b)); *Metz v. Unizan Bank*, 416 F. Supp.2d 568,

Movants do not deny that the doctrine of equitable tolling applies in a TILA timeliness analysis. Rather, their position is that plaintiffs' equitable tolling argument in this case fails, as a matter of law, because it hinges exclusively on allegations of fraudulent concealment that are coextensive with the alleged TILA violations themselves. In other words, defendants balk that equitable tolling is not available where plaintiffs rely on the same conduct (*i.e.*, failing to disclose certain finance charges in loan documents) to show both a violation of TILA and fraudulent concealment justifying equitable tolling of the one-year TILA statute of limitations. Movants persuasively argue, with substantial supporting case citations, that if the failure to make TILA disclosures also tolled the limitations period for pursuing TILA claims, then the statute of limitations would be rendered meaningless because those nondisclosures are the very essence of a TILA violation in the first place. Movants' argument resonates with unambiguous clarity in the decisional authority. As one court has explained, "the overwhelming weight of authority among district courts in this circuit and in courts elsewhere favors the view that, absent some affirmative deception by defendants, the mere nondisclosure of fees later charged to plaintiffs does not, by itself, justify equitable tolling of the TILA limitations period." *McAnaney v. Astoria Financial Corp.*, 2007 WL 2702348, *9 (E.D.N.Y. Sept. 12, 2007).[9] Under this

---

579 (N.D. Ohio 2006) (similar); *Mullinax v. Radian Guar., Inc.*, 311 F. Supp.2d 474, 490 (M.D.N.C. 2004) (similar); *Pedraza v. United Guar. Corp.*, 114 F. Supp.2d 1347, 1356 (S.D. Ga. 2000) ("a plaintiff must satisfy Federal Rule of Civil Procedure 9(b)'s requirement to plead with particularity in her complaint the facts giving rise to a claim of fraudulent concealment before a federal court will toll the statute of limitations"); *Moore v. Liberty Nat. Ins. Co.*, 108 F. Supp.2d 1266, 1273-74 (N.D. Ala. 2000) (similar). Plaintiffs do not dispute the applicability of Rule 9(b) to their claims of equitable tolling, but instead maintain that their Third Amended Complaint satisfies that pleading threshold. Therefore, it is appropriate to consider the availability of equitable tolling for the Williamses' claims at this stage, based solely on examination of the pleadings.

[9]    *See also Gates v. Ohio Savings Bank Ass'n*, 2007 WL 2713897, *4 (N.D. Ohio Sept. 17, 2007) (applying doctrine of equitable tolling in TILA context "requires more than mere non-disclosure by Defendant"); *Veal*, 236 F.R.D. at 580 ("The majority of district courts that have addressed the issue [of equitable tolling of the TILA limitations period] have required fraudulent conduct beyond the non-disclosure."); *In re Community Bank of Northern Virginia*, 467 F. Supp.2d 466, 479 (W.D. Pa. 2006) ("the fraudulent act(s) that provide the factual predicate for the claim, i.e. inaccurate loan documents, cannot also satisfy the factual predicate justifying equitable tolling"); *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp.2d

prodigious line of precedents, a TILA plaintiff who attempts to avail himself of equitable tolling must establish some fraudulent conduct or concealment other than the mere nondisclosure in the loan documents that constitutes the TILA violation itself.  Because the Williamses' equitable tolling claim rests exclusively on the alleged nondisclosures in TILA-mandated forms that are the factual predicate of plaintiffs' TILA claims, defendants assert, equitable tolling cannot save plaintiffs' untimely claims.

---

16, 52 (D.D.C. 2006) (in TILA context, plaintiff's allegation that required disclosures were not made is insufficient basis for equitable tolling, because "[e]xtending the statute of limitations on non-disclosure due to a defendant's non-disclosure surely is contrary to the intention of the legislature in enacting that statute"); *Boursiquot v. Citibank F.S.B.*, 323 F. Supp.2d 350, 354 (D. Conn. 2004) (finding no basis for equitable tolling in TILA action based on plaintiffs' inability to discover nondisclosure because "it is generally established that mere nondisclosures provide insufficient grounds for tolling the statute of limitations, regardless of when the plaintiffs should have discovered the nondisclosure"); *Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp.2d 1177, 1184 (D. Minn. 1999) ("The Courts[] which have applied the doctrine of fraudulent concealment to TILA claims that are directed at alleged nondisclosures, have uniformly held that fraudulent conduct, beyond the nondisclosure itself, is necessary to permit the one-year period to be equitably tolled.") (citation omitted); *Pettola v. Nissan Motor Acceptance Corp.*, 44 F. Supp.2d 442, 450 (D. Conn. 1999) ("In TILA cases, the courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations."); *Jones v. Saxon Mortg., Inc.*, 980 F. Supp. 842, 846 (E.D. Va. 1997) (finding, in a TILA action, that "the alleged acts of concealment ... must amount to more than a failure on behalf of the defendant to disclose the initial fraudulent conduct. Indeed, fraudulent concealment requires some act in addition to the commission of the initial fraudulent act because it 'implies conduct ... affirmatively directed at deflecting litigation'") (citation omitted); *Diehl v. ACRI Co.*, 910 F. Supp. 439, 444 (C.D. Ill. 1995) (finding, in a TILA action, that equitable tolling based on "[f]raudulent concealment requires [the plaintiff to show] more than mere nondisclosure [by defendant]"); *Kicken v. Valentine Production Credit Ass'n*, 628 F. Supp. 1008, 1011 (D. Neb. 1984) ("Since a cause of action under § 1640 is created by nondisclosure of certain rights, the doctrine of fraudulent concealment does not apply unless the defendants have done more than merely fail[] to disclose certain information."); *Hughes v. Cardinal Fed. Sav. & Loan Ass'n*, 566 F. Supp. 834, 838 (S.D. Ohio 1983) (TILA limitations period was not equitably tolled where the plaintiff failed to demonstrate "more than mere non-disclosure"); *Chevalier v. Baird Savings Ass'n*, 371 F. Supp. 1282, 1284 (E.D. Pa. 1974) ("Since Truth-in-Lending creates a 'duty to disclose,' the Plaintiffs argue, the failure to so disclose automatically tolls the statute of limitations. ... To apply the doctrine of fraudulent concealment in such a way would be to nullify the statute of limitations established in § 1640(e). Either that provision would be meaningless, or else plaintiffs would have us believe that a 'violation' occurs only when the requisite disclosures are eventually made, or discovered. This certainly would square with no common understanding of the word 'violation.'").

-8-

In response, plaintiffs do not suggest that their equitable tolling argument turns on anything other than the alleged nondisclosures in the loan documents that undergird the TILA claims themselves. Instead, plaintiffs' only rejoinder to the compelling arguments against equitable tolling in these circumstances is to assert that this Court has recently considered and rejected identical contentions in *Boudin v. Residential Essentials, LLC*, 2007 WL 2023466 (S.D. Ala. July 10, 2007). *Boudin* is materially different from the case at bar, and cannot resuscitate the Williamses' untimely TILA and HOEPA claims. As plaintiffs admit, *Boudin* was not a TILA case, but instead involved claims under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"). For RESPA purposes, the violation is not the failure to make a disclosure, but is instead the payment or splitting of fees other than for services actually performed. *See Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 981 (11th Cir. 2003) ("Subsection 8(b) attempts to close any loopholes by prohibiting any person from giving or accepting any part of a fee unless services were actually performed."). Thus, in the RESPA context, the violation occurs when fees are improperly accepted, split or shared. Any fraudulent concealment or deception in the closing documents would not violate the statute. Thus, this Court properly looked to the loan documents in *Boudin* for evidence of fraudulent concealment to support equitable tolling because the alleged misrepresentations in the loan documents were not violations of RESPA *per se*; therefore, there was no identity of conduct between the alleged RESPA violation and the alleged fraudulent concealment warranting equitable tolling. Here, by contrast, the TILA violation and the alleged fraudulent concealment are one and the same, triggering the obvious concern about nullifying the limitations period if equitable tolling were permitted in that scenario. Simply put, the reasoning applied in *Boudin* with respect to equitable tolling arguments made in the RESPA context does not carry over to similar equitable tolling arguments made in the TILA context. *Boudin* cannot save plaintiffs' equitable tolling theory.[10]

---

[10]     In an attempt to align this action with *Boudin*, plaintiffs argue that the specific allegations in *Boudin* "addressed the same scheme of behavior as in the case at bar: marked-up settlement charges." (Plaintiffs' Brief, at 8.) Plaintiffs are confusing the issue. The TILA and HOEPA causes of action that are at issue in these Rule 12(c) Motions have nothing to do with "marked-up settlement charges," but rather are rooted in allegations of incorrect and otherwise missing disclosures in the loan documents. (Third Amended Complaint, ¶¶ 34-48.) To be sure, plaintiffs have brought RESPA claims against Ticor alleging improperly marked-up settlement

For all of the foregoing reasons, the Court finds that plaintiffs have failed to satisfy their burden of pleading equitable tolling because they have not alleged that HLC and Saxon engaged in any course of conduct designed to conceal evidence of alleged wrongdoing, other than the underlying wrongdoing itself.[11]  As such, plaintiffs' equitable tolling theory fails as a matter of law, and their TILA and HOEPA claims, excepting those for rescission under 15 U.S.C. § 1635(b), are **dismissed** as time-barred.[12]

        3.       *Saxon's New Argument.*

Before leaving the Rule 12(c) Motions, the Court addresses one final matter.  Saxon's Motion for Judgment on the Pleadings (doc. 93) was a barebones, "me-too" motion that simply rode the coattails of HLC's Motion and brief, arguing that "[a]ll claims for alleged violations of TILA and HOEPA are barred by the one year statute of limitations as to Saxon, as an assignee of HLC, to the same extent as they are barred as to HLC."  (Saxon Motion, at 1-2.)  In a reply brief, however, Saxon steps out of HLC's shadow and develops an argument for the first time that as a mere "loan servicer" and not an assignee (contradicting allegations in Saxon's own Rule 12(c) Motion), Saxon is not liable to plaintiffs under TILA pursuant to 16 U.S.C. § 1641(f).  Saxon also raises new arguments under 15 U.S.C. § 1641(e)(1) that even an assignee could not be liable under these circumstances.

_____

charges, but those allegations are irrelevant here because (1) the RESPA claims have already been dismissed, (2) no RESPA claims are asserted against HLC and Saxon, and (3) the timeliness of the RESPA claims is not the subject of the Rule 12(c) Motions, so it does not matter whether equitable tolling might have attached to them had their timeliness been challenged.  As such, that plaintiffs have alleged marked-up settlement charges by <u>other</u> defendants in <u>other</u> counts of the Third Amended Complaint is irrelevant to the timeliness of the TILA and HOEPA causes of action interposed against HLC and Saxon.

[11]     In light of this determination, it is unnecessary to reach movants' other arguments that the Williamses are not entitled to equitable tolling because they have not sufficiently alleged that HLC knew about any excessive fees or that plaintiffs exercised due diligence in attempting to uncover the alleged TILA and HOEPA violations within the one-year statutory period.

[12]     No such dismissal attaches at this time to plaintiffs' claims against newly-added defendant Deutsche, which has very recently appeared in this action.  Plaintiffs have not yet had an opportunity to be heard in opposition to Deutsche's Motion for Judgment on the Pleadings, which was filed just yesterday, and the undersigned will not pretermit their ability to do so by issuing a reflexive ruling on that Motion.

-10-

The Court declines to consider these contentions because they are procedurally improper. A reply brief is not an appropriate time to float new legal theories of relief that could have been raised in prior briefing, but were not.  Indeed, it would be unfair and improper to consider Saxon's newly raised arguments at this time, inasmuch as Saxon could have presented them earlier and plaintiffs have not had an opportunity to be heard in response to them.  *See, e.g., Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 317 n.89 (S.D. Ala. 2006) ("this argument is not properly raised because plaintiffs submitted it for the first time in their reply brief"); *United States v. Feinberg*, 89 F.3d 333, 341 (7th Cir. 1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."); *Sweet v. Pfizer*, 232 F.R.D. 360, 364 n.7 (C.D. Cal. 2005) ("the moving party in a motion cannot submit new information as part of its Reply"); *Martinez v. Weyerhaeuser Mortg. Co.*, 959 F. Supp. 1511, 1515 (S.D. Fla. 1996) ("the Court finds that the movant may not raise new arguments in a reply brief").

> **B.      *The Motion for Leave to File Third-Party Complaint.***

Although the only remaining claims against it seek relief in the form of rescission and attorney's fees, HLC has filed a Motion for Leave to File a Third-Party Complaint (doc. 86).  In its Motion, HLC requests leave to file a four-count Third-Party Complaint asserting claims against Swafford for common law indemnification (Count I), against Ticor for contractual indemnity based on an Insured Closing Service Letter (Count II), against Ticor for contractual indemnity based on the title insurance policy (Count III), and against Swafford for fraud (Count IV).  In that regard, HLC seeks indemnification from all damages, liabilities and attorney's fees that it may owe in connection with this action, as well as enforcement of Ticor's purported "continuing obligation to defend HLC against the allegations made by the Williams Plaintiffs." (Proposed Third-Party Complaint, ¶ 30.)  This Motion was filed on July 16, 2007, which coincided with the deadline set forth in the applicable Rule 16(b) Scheduling Order (doc. 58) for seeking leave to amend the pleadings or join other parties.  The court file reflects, however, that HLC first appeared in this action on February 6, 2007, more than five months before it sought to implead Ticor and Swafford.  (*See* doc. 35.)  Ticor has filed a memorandum of law in opposition to HLC's request.

HLC's Motion is governed by Rule 14(a), Fed.R.Civ.P., which provides that a defendant

may, with leave of court, file a third-party complaint against "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." *Id.*[13] "The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined and brought in so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Dishong v. Peabody Corp.*, 219 F.R.D. 382, 385 (E.D. Va. 2003); *see also Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238 (S.D.N.Y. 2004) ("The underlying principle behind impleader is to promote judicial efficiency by permitting the adjudication of several claims in a single action, and thus to eliminate circuitous, duplicative actions.") (citations and internal quotations omitted).  Federal courts have construed Rule 14 liberally to effectuate its purposes. *See Laughlin v. Dell Financial Services, L.P.*, 465 F. Supp.2d 563, 565 (D.S.C. 2006); *State of New York v. Solvent Chemical Co.*, 179 F.R.D. 90, 93 (W.D.N.Y. 1998).  Indeed, "[a]s long as a third-party action falls within the general contours limned by Rule 14(a), does not contravene customary jurisdictional and venue requirements, and will not work unfair prejudice, a district court should not preclude its prosecution." *Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 650 (7th Cir. 2002) (quoting *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 395 (1st Cir. 1999)).[14]

Factors that district courts have considered in exercising their discretion on Rule 14(a) motions include the following: "(i) whether the movant deliberately delayed or was derelict in filing the motion; (ii) whether impleading would unduly delay or complicate the trial; (iii) whether impleading would prejudice the third-party defendant; and (iv) whether the third-party

---

[13]     *See also Coates v. CTB, Inc.*, 173 F. Supp.2d 1200, 1202 (M.D. Ala. 2001) (third-party pleading is appropriate only where third-party defendant's liability to third-party plaintiff is dependent on the outcome of the main claim, such that "[a]n entirely separate claim, even one that arises out of the same set of facts, does not allow a third-party defendant to be impleaded"); *City of Orange Beach, Ala. v. Scottsdale Ins. Co.*, 166 F.R.D. 506, 510 (S.D. Ala. 1996) ("Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim.") (citation omitted).

[14]     At the time that HLC filed its Motion for Leave to File a Third Party Complaint, Ticor was not a party, all claims against it having previously been dismissed.  As such, the Motion is properly considered under Rule 14(a) because it is in the nature of impleader.

-12-

complaint states a claim upon which relief can be granted." *Nova Products*, 220 F.R.D. at 240; *see also DeRubeis v. Witten Technologies, Inc.*, --- F. Supp.2d ----, 2007 WL 1206724, *6 (N.D. Ga. Apr. 23, 2007) (reciting similar factors); *Z.B. ex rel. Kilmer v. Ammonoosuc Community Health Services, Inc.*, 225 F.R.D. 60, 61 (D. Me. 2004) (in considering a Rule 14(a) motion, district court "should allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings") (citation omitted).

Ticor's position is that HLC's contemplated Third-Party Complaint would needlessly delay and complicate these proceedings. In particular, Ticor asserts that the title insurance policy underlying HLC's proposed contractual indemnity claims has an arbitration clause that encompasses both that policy and the closing protection letter, such that all of HLC's indemnity claims are subject to arbitration, during which time this action would be stayed by operation of 9 U.S.C. § 3.[15] If the Third-Party Complaint is allowed, Ticor states, it will exercise its contractual right to demand arbitration, resulting in this action being stayed indefinitely while an arbitrator ascertains Ticor's indemnity obligations (if any) to HLC under the insurance policy and closing protection letter. HLC trivializes this scenario, characterizing it as nothing more than "a remote chance that Ticor might seek arbitration." (HLC Reply (doc. 95), at 2.) The Court cannot agree. Ticor's counsel has expressly represented in a signed filing (subject to all of the prescriptions and proscriptions of Rule 11) that "if the Impleader Motion were granted, Ticor ***would invoke its right to arbitrate HLC's claims*** for alleged breach of the title insurance policy and the Closing Protection Letter." (Ticor Brief (doc. 92), at 6 (emphasis added).) This is not a "remote chance." Undoubtedly, the ensuing litigation over the applicability of the arbitration clause, and the potentially protracted delay if Ticor's motion to compel arbitration were granted and HLC's indemnity claims were submitted to arbitration, would unduly delay the trial of the Williamses' underlying TILA and HOEPA claims for rescission of their loan agreement, all in the name of

---

[15] That arbitration clause affords Ticor the right to demand arbitration in "any controversy or claim between [Ticor] and [HLC] arising out of or relating to this policy, any service of [Ticor] in connection with its issuance or the breach of a policy provision or other obligation." (Doc. 92, at Exh. 2, ¶ 13.)

collateral matters raised by the Third-Party Complaint.[16]

Ticor also persuasively asserts that granting HLC's Rule 14 motion would substantially and unduly complicate the trial of this matter.  In particular, Ticor suggests that, aside from the arbitration issues, HLC's Third-Party Complaint would trigger a host of additional claims, as Ticor would "likely" bring claims against Swafford and its professional insurer, Title Industry Assurance Company.  (Ticor Brief, at 6.)  It is not at all far-fetched, and indeed appears likely, that this Third-Party Complaint might set off a chain reaction of exponential proportions, enmeshing other parties, other claims, complex insurance and agency agreements, and myriad new legal issues into what is at this time a straightforward dispute confined to the singular issue of whether the Williamses are entitled to rescission of their loan agreement under TILA.  To allow HLC's Third-Party Complaint would be drastically to transform the scope and magnitude of this litigation, and would in all likelihood create a scenario in which a very large tail (*i.e.*, all the third-party claims and finger-pointing between and among the various entities involved in the loan transaction as to who bears responsibility for plaintiffs' attorney fee claims, the damages claims having all been dismissed) would wag a very small dog (*i.e.*, plaintiffs' TILA claims for rescission).  To do so would not promote the interests of judicial economy, but would instead frustrate the objective of prompt, efficient resolution of the Williamses' underlying claims by thrusting them into a maelstrom of ancillary squabbling amongst all of the loan participants (and their respective insurers, assignees, and servicers) through a labyrinth of contracts, insurance policies, and correspondence assigning rights and responsibilities among the different players.  Ultimately, these forces would reasonably be expected to spirit this litigation far away from the

---

[16]       Nor is it availing for HLC to argue the merits of Ticor's motion to compel arbitration at this time.  HLC's argument is not that arbitration is unwarranted on the face of the insurance policy, but is instead only that "[i]t is not clear" whether the arbitration obligation extends to all of HLC's contemplated claims.  (HLC Brief, at 3.)  The time lag inherent in this Court attempting to sort through these issues at this time would itself substantially delay these proceedings, irrespective of whether arbitration were ultimately compelled or not.  Additionally, the Court discerns no merit in HLC's offhand, unexplained musing that Ticor's filing of a Rule 12(b) motion with respect to the Williamses' RESPA claims posited directly against it may somehow constitute a waiver of Ticor's right to arbitrate any claims as between Ticor and HLC even though HLC's claims had not been interposed as of the time that Ticor litigated plaintiffs' RESPA claims.

very simple question presented, to-wit: Are the Williamses entitled to rescind their mortgage loan transaction?  If that question is answered affirmatively, then HLC will have ample recourse against Ticor, Swafford and anyone else it sees fit for plaintiffs' attorney fee claims and any other financial repercussions, inasmuch as HLC has never suggested that its rights to pursue other players in the loan transaction will be cut off or impaired in any way, or that it will otherwise incur any prejudice, if its Rule 14 motion is denied.  *See generally DeRubeis*, 2007 WL 1206724, at *6 (denying leave to file third-party complaint where movant would be amply protected by its right to commence independent action).

Finally, the Court is of the opinion that the relevant equities weigh against allowing HLC's impleader motion.  As mentioned *supra*, HLC did not initiate its Rule 14 Motion until more than five months after it filed its answer.  When Ticor challenged the timing of this Motion, HLC made no attempt to justify or explain its failure to act earlier, but instead simply noted that the Rule 16(b) deadline for joining parties had not expired.  That is a different question. Whether HLC's Rule 14 Motion complied with the applicable Scheduling Order is entirely distinct from whether HLC unreasonably delayed or was derelict in pursuing its third-party claims.  *See, e.g., DTM Research, L.L.C. v. AT & T Corp.*, 179 F.R.D. 161, 162-63 & n.3 (D. Md. 1998) (finding that movant unduly delayed in seeking to join third parties, even though it sought to add new party prior to the scheduling order's deadline for joinder, where the movant offered no good excuse for failing to implead the third-party defendant much earlier and nothing in the scheduling order binds the court to allow any proposed joinder filed before the deadline). Simply put, HLC has made no showing that it could not have filed its claims against Ticor and Swafford as early as February 2007, and has not attempted to justify its decision to refrain from taking action for five months before attempting to sue Ticor and Swafford.  And this delay can be expected to have an adverse effect on Ticor.  The discovery deadline in this action is just two weeks away.  Strategy decisions have already been made as to how HLC will defend against the Williamses' claims.  To force Ticor into the mix at this late date would place it in the unenviable and totally avoidable position of playing catch-up, particularly to the extent that HLC is demanding that Ticor furnish it a defense.  A Rule 16(b) Scheduling Order is not a license for a party to sit on its rights until the last possible day before lobbing a hand grenade into the litigation that will undoubtedly force the extension of pretrial and trial deadlines, give rise to

untold rounds of additional pleadings, discovery and motion practice, and place the impleaded parties at a strategic disadvantage.  That is precisely what HLC has done here.[17]

For all of the foregoing reasons, the Court exercises its discretion to **deny** HLC's Motion for Leave to File a Third Party Complaint (doc. 86) on grounds that the proposed impleader of Ticor and Swafford would unduly delay and complicate the trial of this action, and that HLC unreasonably delayed in bringing the Motion.

### C.     *The Motion to Dismiss.*

Back on June 23, 2007, the undersigned entered an Order (doc. 85) dismissing Counts III and IV of the Second Amended Complaint, which purported to state RESPA claims against Ticor.  Just over two months later, on September 2, 2007, plaintiffs filed a Third Amended Complaint (doc. 104) that, *inter alia*, reiterated the previously dismissed Counts III and IV against Ticor.  To be clear, plaintiffs did not endeavor to correct any pleading deficiencies in Counts III and IV but instead reasserted them in substantively identical form to the causes of action dismissed via the June 23 Order.  Not surprisingly, Ticor has once again filed a Motion to Dismiss (doc. 107), on the grounds that this Court has already dismissed these very causes of action against it in this very litigation.

Plaintiffs apparently do not intend to re-litigate the propriety of the RESPA claims against Ticor at this time; rather, they explain the inclusion of such causes of action in the Third Amended Complaint as having been done "in order to preserve the right to appeal the dismissal." (Doc. 104, at 1 n.1.)[18]  Assuming the validity of that premise, the fact remains that this Court has

---

[17]     It is no answer for HLC to hypothesize that, if its Rule 14 Motion is denied, it "may move to stay the entire proceeding until Ticor's obligations are established." (HLC Brief, at 7 n.2.)  HLC identifies no authority that might warrant entry of a stay in those circumstances. Assuming for the moment that a stay might be appropriate, if it is truly HLC's position that the Williamses' claims against it for rescission cannot proceed until this Court has adjudicated "Ticor's obligations" to HLC, then plaintiffs' claims must be stayed irrespective of whether the Rule 14 Motion is granted or denied, and irrespective of whether HLC sues Ticor in this action or in an independent proceeding.  Under this formulation, granting the Rule 14 Motion would in no way obviate the need for a stay, expedite the resolution of the Williamses' underlying claims against HLC, Saxon and Deutsche, or otherwise promote the objectives of judicial economy.

[18]     It is far from clear why such claims would need to be re-pleaded in a subsequent amended Complaint when the Court has unambiguously and unequivocally dismissed them in a

already dismissed Counts III and IV, and they are not properly part of this action for the same reasons set forth in the June 23, 2007 Order.  Accordingly, Ticor's Motion to Dismiss Third Amended Complaint (doc. 107) is well taken, and Counts III and IV of the Third Amended Complaint are **dismissed**.

## III.   Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.     Homeowners Loan Corp.'s Motion for Judgment on the Pleadings (doc. 87) and Saxon Mortgage Services, Inc.'s Motion for Judgment on the Pleadings (doc. 93) are **granted in part**, and **denied in part**.  In particular, both Motions are **denied** insofar as they seek dismissal of those portions of Counts I and II seeking rescission of the loan transaction, and **granted** in all other respects on limitations grounds.

2.     Homeowners Loan Corp.'s Renewed Motion for Judgment on the Pleadings (doc. 109) is **moot**.

3.     Homeowners Loan Corp.'s Opposed Motion for Leave to File a Third Party Complaint (doc. 86) is **denied**.

4.     Ticor Title Insurance Company of Florida's Motion to Dismiss Third Amended Complaint (doc. 107) is **granted**.

---

previous order, over plaintiffs' objection, or why such claims might be deemed inadequately preserved in the absence of such a redundant, futile, and empty gesture.  *See generally Nelson v. Adams USA Inc.*, 529 U.S. 460, 469, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000) ("It is indeed the general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts. But this principle does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue."); *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) ("Failure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal" to appeal predicated on that issue) (citation omitted); *Boggs v. West*, 188 F.3d 1335, 1337-38 (Fed. Cir. 1999) (general rule is that issues must be "clearly raised in the proceedings below" in order to be preserved for appellate review); *Aerotronics, Inc. v. Pneumo Abex Corp.*, 62 F.3d 1053, 1066 (8th Cir. 1995) (issue is sufficiently preserved for appellate review if party raised the issue by motion and district court made definitive pretrial ruling that affected entire course of trial).

DONE and ORDERED this 27th day of September, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE