IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JEROME WILLIAMS,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CIVIL ACTION 06-0799-WS-B |
| ) | |
| **SAXON MORTGAGE COMPANY,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This heavily-litigated matter once again comes before the undersigned, this time on defendant Homeowners Loan Corporation's Motion for Summary Judgment or, Alternatively, Motion to Alter the Statutory Rescission Process (doc. 121). The Motion has been briefed and is ripe for disposition.[1]

**I.      Background.**[2]

On March 30, 2005, plaintiffs Jerome Williams, Linda Williams and Claude Williams, Sr. entered into a loan transaction with defendant Homeowners Loan Corporation ("HLC") to refinance the mortgage on their residence in Mobile, Alabama. (J. Williams Aff., ¶¶ 5-6.) The principal amount of the 30-year adjustable-rate mortgage loan was $40,050, with an initial interest rate of 8.99% that has since increased several times. (*Id.*, ¶ 7; Plaintiffs' Exh. B.) A form labeled "Truth-In-Lending Disclosure (Real Estate)" reflects that the annual percentage rate

---

[1]     In briefing the Motion, defendant Homeowners Loan Corporation has requested oral argument. Pursuant to Local Rule 7.3, the Court in its discretion may rule on any motion without oral argument. After careful consideration of the parties' submissions, the undersigned is of the opinion that oral argument would not be of substantial assistance in resolving the straightforward legal issues presented. Accordingly, the request for oral argument is **denied**.

[2]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiffs' evidence is taken as true and all justifiable inferences are drawn in their favor.

of the loan was 11.498%, that the total payments the Williamses would be obliged to make over the life of the loan were $135,241.18, and that the loan was subject to prepayment penalties and a payment-on-demand clause.  (Plaintiffs' Exh. C.)[3]

On December 29, 2006 (approximately one month after initiating this lawsuit), the Williamses (by and through counsel) transmitted a document captioned "Notice of Rescission" to HLC.  (Plaintiffs' Exh. I.)  The letter purported to constitute "notice of the exercis [*sic*] of the Williamses' right to rescind the ... loan pursuant to 15 U.S.C. §§ 1635 and 1639" on the grounds that "HLC failed to properly disclose the actual finance charges imposed in connection with the loan."  (*Id.* at 1-2.)  The rescission letter enumerated alleged undisclosed finance charges in the total amount of $920 as follows: (a) a mark-up on charges for "Abstract and Title Search" and "Title Examination," for which the closing agent paid a third-party vendor $90 while charging the Williamses $600; (b) a charge for "Title Insurance Premium" of $200 that exceeded the maximum permitted by Alabama law; and (c) a marked-up charge of $120 for "Recording Fees" even though the actual fee paid to the Mobile County Probate Court was only $52.  (*Id.*)  Plaintiffs' position, as stated in the December 2006 letter, is that the omission of these amounts from the finance charges disclosed in the loan paperwork, and the associated omission of required "high rate loan" disclosures, violate federal law and entitle plaintiffs to rescind the loan transaction.  (*Id.*)  It is apparently undisputed that HLC did not respond to the Notice of Rescission, and took no steps to honor plaintiffs' request or cancel its security interest in the property.

---

[3] The parties' summary judgment submissions include various transactional documents that have not been authenticated or otherwise submitted in admissible form. Notwithstanding this omission, no party has objected, and it appears that these exhibits can be reduced to admissible form at trial; therefore, they will be considered on summary judgment. *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."); *U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F. Supp.2d 1322, 1327 n. 2 (S.D. Ala. 2003) ("Documents must generally be properly authenticated to be considered at summary judgment, unless it is apparent that those documents can be reduced to admissible, authenticated form at trial."); *see generally Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) ("[e]vidence inadmissible at trial cannot be used to avoid summary judgment") (citation omitted).

In this action, the Williamses brought a number of claims arising from the loan transaction against HLC and two alleged assignees (Saxon Mortgage Services, Inc. and Deutsche Bank National Trust Company) under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), and the Home Ownership and Equity Protection Act, 15 U.S.C. §§ 1602(aa) and 1639 ("HOEPA"). Broadly speaking, plaintiffs' TILA claims allege that the finance charge disclosed at closing incorrectly omitted certain fees, while their HOEPA claims assert that certain mandatory disclosures for high rate loans were not made and certain features of the loan (*i.e.*, payable-on-demand clause, prepayment penalties) were unlawful. On September 27, 2007, the undersigned entered a lengthy Order (doc. 114) that, *inter alia*, dismissed the Williamses' TILA and HOEPA non-rescission claims as untimely because the Complaint was filed eight months after the one-year limitations period expired.[4] The September 27 Order further determined that plaintiffs' claims under TILA and HOEPA seeking rescission of the underlying mortgage refinancing transaction were not time-barred because the limitations period runs from 20 days after plaintiffs gave notice of rescission. Thus, the sole remaining causes of action are the Williamses' claims under TILA and HOEPA for rescission of the March 30, 2005 loan.

HLC has now moved for summary judgment on the rescission claims. To be clear, neither in the Motion for Summary Judgment (doc. 121) nor at any other time has HLC ever argued that the record lacks sufficient evidence of the substantive prerequisites for the rescission remedy for that claim to proceed to trial. Instead, HLC's Motion hinges on the procedural mechanism through which the rescission remedy would be carried out. Rescission of a loan transaction generally requires that both parties be restored to their respective *ex ante* positions. HLC questions the Williamses' ability to satisfy that obligation if rescission were ordered, and therefore seeks an order requiring plaintiffs "within thirty (30) days, to provide definitive evidence of their ability to tender the necessary rescission amounts should they prevail on their rescission claim. In the event Plaintiffs fail to make an adequate showing, HLC requests that

---

[4] The September 27 Order rejected plaintiffs' theory that the doctrine of equitable tolling preserved their untimely claims. In so concluding, the Court deemed equitable tolling inapplicable because, under well-developed case law, nondisclosures providing the factual predicate for a TILA claim cannot also satisfy the factual predicate for equitable tolling, else the statutory limitations period would be rendered nugatory.

their rescission claim be dismissed with prejudice." (Motion, ¶ 6.) Alternatively, HLC asks the Court to modify the statutorily prescribed rescission procedure "to require either (1) that the Plaintiffs provide HLC with the loan proceeds, prior to the termination of the security interest and to HLC's returning all payments made on the loan to Plaintiffs or (2) that there be a simultaneous exchange of the funds between the parties." (*Id.*, ¶ 7.) In its reply brief (doc. 133), HLC proffers as a third potential modification that the Court require "HLC to provide a Payoff Statement to Plaintiffs that reflects the agreed to amounts owed by both parties under the rescission process, which Plaintiffs could then use to arrange for the requisite refinancing of the amount owed to HLC." (Reply (doc. 133), at 2-3.) Plaintiffs oppose the Motion.

## II.     Summary Judgment Standard.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III.    Analysis.

As discussed above, there are two distinct prongs to HLC's Motion for Summary Judgment. First, HLC asks the Court to order plaintiffs to produce evidence of their ability to repay the loan, and to dismiss the rescission causes of action if plaintiffs fail to come forward

with satisfactory proof of such ability to pay.  Second, and in the alternative, HLC asks the Court to modify equitably the statutory rescission procedure to ensure that plaintiffs make good on their repayment obligations if rescission is awarded.  Each aspect of the Motion will be addressed in turn.

> ### A. *Dismissal of the Rescission Claim is Unwarranted.*
>> #### 1. *Statutory Procedures for Rescission.*

Plaintiffs have invoked their right to rescind the loan transaction pursuant to 15 U.S.C. §§ 1635 and 1639, which authorize an obligor to rescind a transaction as late as three years after it is consummated if the required disclosures are not made.  *See Williams v. Homestake Mortg. Co.*, 968 F.2d 1137, 1139 n.5 (11th Cir. 1992) ("the consumer's ability to rescind an agreement may be extended for up to three years if the creditor fails to make all material disclosures" required by TILA).[5]  For purposes of the pending Motion for Summary Judgment, the parties do not dispute that the Williamses properly furnished notice of rescission to HLC via the December 2006 letter.[6]

Unquestionably, "[w]hen a borrower rescinds a loan, he or she must return the money borrowed."  *In re Porter*, 961 F.2d 1066, 1077 (3rd Cir. 1992).  A pivotal question presented by this Motion for Summary Judgment is when.  The statute delineates a specific procedure to be followed when the debtor exercises its right of rescission.  In particular, § 1635(b) provides that

---

[5]  *See also In re Hopkins*, 372 B.R. 734, 743 (Bankr. E.D. Pa. 2007) ("If a lender fails to provide all material disclosures, the borrower has up to three years from the date of the loan transaction to exercise her right of rescission."); *In re White*, 374 B.R. 257, 262 (Bankr. D. Kan. 2007) (observing that borrower's right to rescind under TILA lasts up to three years if the lender fails to provide the required disclosures and notice); *In re Walker*, 232 B.R. 725, 732 (Bankr. N.D. Ill. 1999) (recognizing that if creditor fails to deliver all material disclosures, right to rescind exists for three years after consummation of the transaction).

[6]  That is not to say, however, that HLC has conceded that the right to rescission attaches here; to the contrary, HLC takes pains to point out that it "has repeatedly denied that Plaintiffs are entitled to rescind their loan" and that it holds fast to that position today.  (Movant's Brief (doc. 122), at 3; Reply Brief (doc. 133), at 2.)  Nonetheless, HLC does not seek summary judgment on that basis.  The question presented on summary judgment is not whether the Williamses are entitled to rescind the loan, but is instead whether, assuming such a right to rescission exists, that right may be extinguished unless the Williamses first prove their ability to satisfy their statutory obligation to repay the loan.

upon receipt of notice of rescission, the creditor shall return all earnest money or downpayments to the debtor and shall terminate its security interest in the property.  "Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor." 15 U.S.C. § 1635(b); *see also Belini v. Washington Mut. Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005) ("upon receiving a debtor's valid notice of rescission, the creditor must, within twenty days, return all money paid by the debtor and must void the security interest").  Thus, the statute contemplates a three-step sequence in which the debtor notifies the creditor of exercise of rescission rights, the creditor tenders all payments received from the debtor and terminates its security interest in the residence, and the debtor tenders the loan proceeds to the creditor.  The Eleventh Circuit has explained that the "sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission." *Williams*, 968 F.2d at 1140.  In this context, "all that the consumer need do is notify the creditor of his intent to rescind.  The agreement is then automatically rescinded and the creditor must, ordinarily, tender first." *Id.*[7]  The net effect of this reconfiguration of conventional rescission procedures is that the consumer is placed in a much stronger bargaining position than he or she would otherwise enjoy.  *See id.*

If the creditor fails to comply with the § 1635(b) procedure following receipt of the rescission demand, that omission constitutes a separate violation of TILA.  *See Belini*, 412 F.3d at 25 (if creditor failed to return all money paid and void security interest within 20 days after receipt of valid notice of rescission, creditor had "generally violated a 'requirement' of section 1635"); *see also In re Hopkins*, 372 B.R. 734, 751 (Bankr. E.D. Pa. 2007) ("The failure to honor a valid rescission demand is itself a TILA violation ....") (citation omitted).  Thus, the Williamses have brought separate TILA/HOEPA claims against HLC based on the latter's failure to honor the Notice of Rescission by tendering performance as required by § 1635(b).

        2.     *The Court's Power to Modify the Statutory Procedures.*

"Although the right to rescind is statutorily granted [by TILA], it remains an equitable doctrine subject to equitable considerations." *Brown v. National Permanent Federal Sav. &*

---

[7] In that regard, one court remarked that "[i]t is apparent from the plain language of the statute that the borrower does not have to tender the proceeds of the loan before invoking her right to rescind unless and until a court decides otherwise and modifies the statutory scheme." *Johnson v. Chase Manhattan Bank, USA N.A.*, 2007 WL 2033833, *5 (E.D. Pa. July 11, 2007).

*Loan Ass'n*, 683 F.2d 444, 447-48 (D.C. Cir. 1982); *see also American Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 819 (4th Cir. 2007) (same). Indeed, notwithstanding the specific rescission procedures outlined in TILA, courts retain discretion to modify those procedures where warranted in a particular case. *See* 15 U.S.C. § 1635(b) ("The procedures prescribed by this subsection shall apply except when otherwise ordered by a court."). The Eleventh Circuit held in *Williams* that "a court may impose conditions that run with the voiding of a creditor's security interest upon terms that would be equitable and just to the parties in view of all surrounding circumstances." 968 F.2d at 1142. One condition that some courts have imposed is that the debtor be required to tender performance contemporaneously with the creditor, or otherwise to provide suitable assurances of its ability to pay before the creditor tenders its performance. *See, e.g., American Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820-21 (4th Cir. 2007) ("Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest.").[8]

Of course, that courts are empowered to modify the § 1635(b) rescission procedures does not imply that courts must do so in every case. *See Johnson v. Chase Manhattan Bank, USA N.A.*, 2007 WL 2033833, *5 (E.D. Pa. July 11, 2007) ("this modification is a matter of the court's equitable discretion and does not operate automatically"). The discretion to modify the statutory procedures is broad. *See Williams*, 968 F.2d at 1142 (observing that "the plain

---

[8] *See also In re Sterten*, 352 B.R. 380, 387 (Bankr. E.D. Pa. 2006) (determining that "permitting a consumer a reasonable time frame to repay the creditor while the creditor retains the security interest it acquired in the rescinded transaction [is] a balanced, equitable approach"); *Egipciaco Ruiz v. R & G Financial Corp.*, 383 F. Supp.2d 318, 321 (D.P.R. 2005) (noting that many courts have conditioned right of rescission on consumer's tender of amount borrowed when ability to tender is in question); *In re Miller*, 320 B.R. 203, 210 (Bankr. N.D. Ala. 2005) ("Rescission is an equitable remedy and courts may condition its allowance upon the borrower's return of those funds advanced by the creditor."); *Quenzer v. Advanta Mortg. Corp. USA*, 288 B.R. 884, 888 (D. Kan. 2003) ("although a debtor's tender back is not mandated as a prerequisite to rescission, it may be an appropriate condition attached thereto under certain circumstances because of the equitable nature [of] that statutory remedy"); *AFS Financial, Inc. v. Burdette*, 105 F. Supp.2d 881 (N.D. Ill. 2000) ("It is now well settled that a court, in the exercise of its equitable discretion ... can condition rescission upon tender of amounts previously advanced, leaving the security interest in place until the tender is made.").

language of § 1635(b) leaves little room for narrowing the court's ability to modify the process of effecting rescission"). In exercising discretion over whether and how to modify the statutory rescission procedures in a particular case, courts "should consider traditional equitable notions, including such factors as the severity of [the lender]'s TILA violations and whether [the borrower] has the ability to repay the principal amount." *Williams*, 968 F.2d at 1142. The twin aims of this process are always to restore the parties to the status quo *ante* and to maintain the vitality of rescission as an enforcement tool. *See id.* at 1140, 1142 ("Though one goal of the statutory rescission process is to place the consumer in a much stronger bargaining position, another goal of § 1635(b) is to return the parties most nearly to the position they held prior to entering into the transaction.").

> 3. *Movant's Speculation that Debtors Lack the Ability to Pay Does Not Warrant Dismissal of the Rescission Claims.*

Given that legal backdrop, the Court now turns to the specific premise of HLC's Motion. Simply put, HLC harbors "significant doubts" that the Williamses would be able to tender the full amount of the loan if the rescission remedy were granted. (Movant's Brief, at 6.) Based on those inchoate doubts (unsupported by a shred of evidence), HLC requests that this Court (a) order plaintiffs to prove within 30 days that they have the wherewithal to repay the loan immediately as a single lump-sum payment, and (b) grant summary judgment in HLC's favor if plaintiffs fail to make such a showing.[9]

---

[9] The only record evidence that HLC submits with its Motion consists of a copy of the loan settlement statement showing the principal value of the loan as being $40,050, a copy of plaintiffs' counsel's December 2006 notice of rescission, and an affidavit from defendant's counsel explaining HLC's reasons for seeking summary judgment and purporting to state HLC's belief that the Williamses have discontinued making mortgage payments and its understanding as to the amount of loan proceeds that the Williamses would be required to repay if rescission is granted. The attorney affidavit is unhelpful. HLC's experiences in other matters involving other debtors are not relevant. And an attorney's representation about what his client "believes" or "understands" the facts to be is far too attenuated to warrant consideration, even under the relaxed evidentiary standards of summary judgment. At best, counsel's representations are double hearsay. At worst, they are bare guesswork. Either way, unsupported representations of counsel do not constitute evidence that may be considered on summary judgment. *See, e.g., Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 (1st Cir. 1993) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other such 'self-serving' documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary

The relief sought by HLC is inappropriate for three distinct reasons. First, HLC's request that the Court order plaintiffs to produce "definitive evidence" of their ability to tender the necessary rescission amounts is both problematic and irregular. It is black-letter law that, on summary judgment, "[t]he moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). Rather than meeting its initial burden to show that rescission is unavailable because of plaintiffs' inability to perform, HLC would shift that burden to the Williamses. Such a gambit is a perversion of bedrock summary judgment protocols. Moreover, HLC has enjoyed the benefit of a six-month period of discovery in this action dating from April 10, 2007 through October 10, 2007. In a case about rescission, surely it would behoove the creditor to inquire during the discovery process as to the debtor's ability to comply with its obligations under § 1635(b). Yet HLC offers no evidence that it ever explored this important issue. Now, after the close of discovery, HLC would have this Court conduct discovery for it, by requiring plaintiffs to produce evidence of their ability to pay, when such information could and should have been elicited during the discovery process. The Court declines to transform the summary judgment procedure into a supplemental discovery period, in which the Court orders non-movants to respond to factual inquiries that the movant neglected to make during discovery and effectively shifts the initial burden on summary judgment from movant to non-movant.

Second, even though it was not their burden to do so, plaintiffs have come forward with an adequate showing of their ability to repay the loan if rescission is granted. In particular, plaintiffs have submitted the Affidavit of Jerome Williams, which includes averments that he is employed full-time as a maintenance supervisor, that the home's appraised value as of March 2005 was $44,500, that Jerome Williams believes he will be able to obtain a mortgage loan to pay off the balance of the note if HLC's security interest in the property is terminated, and that he has attempted to work with the current mortgage holder, defendant Saxon Mortgage

---

judgment."); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) ("opinions, allegations, and conclusory statements of counsel do not substitute for evidence").

Company, to catch up on payments (which have risen by two-thirds in the last two years under the adjustable rate feature of the loan). (Plaintiffs' Response (doc. 132), at Exh. A.) Based on this unrebutted showing by plaintiffs, there is no reason to believe (and certainly no evidence of record proffered by HLC to suggest) that suitable arrangements could not be made for HLC to be made whole for the full balance of the loan within a reasonable time period if rescission were ordered.

Third, even it were proper for HLC to seek summary judgment in this manner, on the record before it the Court would decline to exercise its discretion to extinguish plaintiffs' right of rescission altogether based on the mere possibility that plaintiffs may encounter difficulty in refinancing the HLC loan. In the light most favorable to plaintiffs, the record reflects that HLC's violations were not mere technicalities or oversights, but were instead systematic omissions by HLC from the mandatory disclosures of certain finance charges pertaining to inflated fees, as well as facially unlawful pay-on-demand and prepayment penalty features. Further, as noted *supra* there is absolutely no reason to believe that the Williamses would be incapable of repaying the principal amount if rescission were ordered. Accordingly, weighing traditional equitable notions, and bearing in mind the twin goals of § 1635(b) of placing the consumer in a stronger bargaining position and restoring the parties to their *ex ante* positions, the Court declines to dismiss the Williamses' rescission claims based on inchoate, undeveloped fears that they might prove unable to repay the HLC loan if rescission is ordered. In so concluding, the undersigned finds persuasive *Jones v. Rees-Max, LLC*, 514 F. Supp.2d 1139 (D. Minn. 2007), in which the lender moved for summary judgment on the debtor's TILA and HOEPA rescission claims on the ground that the debtors had failed to demonstrate that they could tender the value of the property within a reasonable period. The *Jones* court denied summary judgment, reasoning that "it is within this Court's discretion to allow the debtor a reasonable time to pay the mortgage amount. ... Given the discretion within which the Court may condition the right to rescission, it is not necessary that the [debtors] demonstrate they have the means to secure the necessary financing at this point in time." *Id.* at 1146. Similarly, the Eastern District of Pennsylvania recently denied a lender's motion to dismiss a borrower's TILA rescission claims because the lender, like HLC here, had failed to establish a record of the borrower's inability to return the loan proceeds or of any other relevant equitable considerations. *See Johnson*, 2007 WL 2033833, at *5. *Jones* and

*Johnson* serve to bolster this Court's determination that the showing demanded by HLC is not necessary at this juncture.[10]

For all of these reasons, HLC's request that the Williamses be ordered to prove their ability to pay and, if they fail to do so, their rescission claims be dismissed with prejudice is **denied**.

### B.     *The Request for Modification of Rescission Procedure is Premature.*

As an alternative to its request that plaintiffs be ordered to prove their ability to tender the loan amount on pain of entry of summary judgment against them, HLC requests that the Court exercise its discretion to modify equitably the § 1635(b) sequence of rescission and tender by ordering one of the following: (1) that plaintiffs repay the full loan proceeds in advance of HLC terminating its security interest and reimbursing plaintiffs the payments made to date, (2) that simultaneous tender occur, or (3) that the parties reach agreement on the amounts owed by each, after which HLC shall issue a payoff statement that plaintiffs must utilize to obtain refinancing within 60 days.

The problem with this request is that it is not properly couched as a motion for summary judgment. At this point, the Court understands, the question of whether the Williamses are entitled to rescission at all is heavily disputed by the parties and constitutes the primary (if not the only) triable issue in this case. HLC's Motion for Summary Judgment asks the Court to choose now among multiple options for implementing the rescission process, presupposing that (a) rescission will be awarded in plaintiffs' favor, and (b) the parties will be unable to agree

---

[10]     In arguing otherwise, HLC relies heavily on a Ninth Circuit decision, *Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003). In that case, the court found that the district court did not abuse its discretion in granting the lender's motion for summary judgment on a rescission claim where the record reflected that the borrower was unable to tender the loan proceeds. But *Yamamoto* is unavailing here. That decision stresses that summary judgment may be granted on a TILA rescission claim based on a borrower's inability to perform "on a case-by-case basis, in light of the record adduced." *Id.* at 1173. In *Yamamoto* itself, the panel found that "it is clear from the evidence that the borrower lacks capacity to pay back what she has received." *Id.* Here, however, no such clarity exists. HLC has failed to adduce any record that might establish such a lack of capacity, and has failed adequately to rebut plaintiffs' *prima facie* showing that they will be able to refinance the loan once HLC's lien is removed. Thus, the case at bar bears little similarity to *Yamamoto* because its factual posture is markedly different.

among themselves as to the precise contours of rescission and tender. As such, HLC is putting the cart before the horse by asking the Court to made an advisory ruling on a hypothetical question that may never be presented. In official staff interpretations to TILA regulations that it promulgated, the Federal Reserve Board of Governors has cautioned that "[w]here the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property." 69 Fed. Reg. 16,769, 16,774 (2004). The Court perceives no reason to deviate from that sensible, efficient methodology here. If, following trial on the merits, it is determined that the Williamses are entitled to rescind the loan, the Court will address at that point the proper procedures for implementing the rescission. No constructive purpose would be served by the Court wading into those mechanical details at this time; therefore, the Court declines HLC's invitation to do so.[11]

## IV. Conclusion.

For all of the foregoing reasons, defendant Homeowners Loan Corp.'s Motion for Summary Judgment or, Alternatively, Motion to Alter the Statutory Rescission Process (doc. 121) is **denied**. The denial of the request to alter the § 1635(b) procedure is without prejudice to HLC's ability to renew such motion at an appropriate time if the rescission remedy is ordered and the parties prove unable to agree on the proper method and manner of administering that remedy. This action remains set for a Final Pretrial Conference before the undersigned on

---

[11] In any event, the parties' briefs reflect substantial agreement as to how the rescission process should unfold if plaintiffs prevail at trial. Specifically, in their opposition brief, the Williamses propose the following procedure: (a) the parties could attempt to agree on basic facts concerning the payments owed by the Williamses to HLC and by HLC to the Williamses; (b) after those basic facts are agreed upon, HLC could produce a payoff statement reflecting credits due to the Williamses; and (c) the Williamses could utilize that payoff statement to arrange for refinancing of the loan within a reasonable time. (Doc. 132, at 14-15.) In response, HLC states it "is agreeable to Plaintiffs' suggestion" that the parties proceed in this fashion. (Doc. 133, at 5.) As such, it appears highly likely that, if rescission is awarded to plaintiffs at trial, the parties will be able to hammer out the details of that rescission process via good-faith negotiation without substantial court interference. In the interests of judicial economy and efficiency, the Court will not issue edicts and directives in this area unless and until the plaintiffs prevail at trial and the parties prove unable to reach good-faith agreement on the rescission procedures.

**January 15, 2008** at **10:30 a.m.**

    DONE and ORDERED this 2nd day of January, 2008.

                                                 s/ WILLIAM H. STEELE
                                                 UNITED STATES DISTRICT JUDGE